UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| JULIE NICOLE HOLT, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Commissioner of Social Security, )<br>    Defendant. ) | Case No: 4:12-CV-65<br>Mattice/Carter |

REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's Motion for Judgment on the Administrative Record (Doc. 11) and Defendant's Motion for Summary Judgment (Doc. 13).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

Plaintiff's Age, Education, and Past Work Experience

Plaintiff was 32 years old with a 12th grade education when the ALJ rendered his decision (Tr. 15, 111, 113, 138). She had worked in the past as a purchasing agent, administrative assistant, personal care assistant, and substitute teacher (Tr. 134-35, 140-50).

Applications for Benefits

On May 27, 2009, Plaintiff protectively filed for disability insurance benefits (DIB) and

supplemental security income (SSI), alleging a disability onset date of December 15, 2008 (Tr. 111-16, 129). After Plaintiff's claim was denied initially (Tr. 47-48, 51-56) and on reconsideration (Tr. 49-50, 58-63), the Administrative Law Judge (ALJ) held a hearing on November 16, 2010 (Tr. 30-46) and issued an unfavorable decision on December 30, 2010 (Tr. 15-29). The ALJ found Plaintiff had not been under a disability from December 15, 2008 through the date of the decision (Tr. 25). On January 21, 2011, Plaintiff filed a request for review of the ALJ's decision (Tr. 14). The Appeals Council denied Plaintiff's request for review (Tr. 1-5), and the Commissioner's decision is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff alleged that she was disabled due to rheumatoid arthritis, fibromyalgia, and depression (Tr. 133).

<u>Standard of Review - Findings of the ALJ</u>

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); <u>Abbot v. Sullivan</u>, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in

2

significant numbers in the regional or the national economy he/she is not disabled. Id. If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; Skinner v. Secretary of Health & Human Servs., 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. Richardson v. Secretary, Health and Human Servs., 735 F.2d 962, 964 (6th Cir. 1984); Noe v. Weinberger, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); Landsaw v. Secretary, Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. Ross v. Richardson, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994) (citing Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir. 1986)); Crisp v. Secretary, Health and Human Servs., 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since

3

      December 15, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: fibromyalgia; obesity; seronegative arthritis; affective disorder, and anxiety-related disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1525, 404.1526, 404.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except precluded from climbing ladders, ropes and scaffolds. Claimant has the ability to understand and remember simple and detailed instructions; the ability to maintain attention and concentration for periods of at least two hours; the ability to relate appropriately to peers and supervisors, and adapt to routine workplace changes.

6. The claimant is capable of performing past relevant work as an administrative assistant, and purchasing agent. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 20-25).

Issue Presented

1) Whether the ALJ erred in rejecting the opinion of treating physician Dr. Victor Byrd, who described limitations that would not allow Plaintiff to perform substantial gainful activity, even at the sedentary level.

2) Whether the ALJ erred in rejecting Plaintiff's reports of pain due to arthritis and fibromyalgia.

Relevant Facts

A. Medical Evidence

    Plaintiff's medical treatment is set forth in detail in the ALJ's Administrative Decision

4

(Tr. 18-25) and in Plaintiff's memorandum. I will not repeat it here but will refer to relevant portions of it in the analysis section.

  B. <u>Hearing Testimony</u>

Plaintiff testified she has physical pain in her shoulders, hips, knees and hands. She is able to walk around the block on a good day. On a bad day, she can't walk across Wal-Mart to get her grocery shopping done. She can stand for 10 minutes at a time. She cannot squat. She can bend and stoop some, but not very long. She can lift no more than 10 pounds without pain. She can sit for 15 to 20 minutes in a straight chair. She naps during the day at times. She can follow a story on television. She has difficulty sleeping. On an average day, she rates her pain an 8 of 10. She cooks for her family with help from her husband and her mother. She has three small children at home. Her husband is good to help her out with the laundry. She uses a computer some but not very often. She watches television. She has a hard time with pain on rainy days. Cold weather is worse than warm, and winter is the worst (Tr. 33-35).

She testified that she started seeing Dr. Byrd in February of 2006. As her rheumatologist, he prescribes her injections and all of her medication. She sees him every three to four months and pays out of pocket since she has no insurance. Her husband works, but he is able to help with things around the house. Her parents live nearby and are good at helping out as well. Her youngest child was born January 21, 2009. At that time she had to have help with her older two children who were seven and eleven. Her parents helped take them to and from school, helped with the homework, helped with supper, and helped with the laundry. If she was not feeling well, one or both of her parents would come over to stay with the baby for her to lie down, usually in the middle of the day for a couple of hours (Tr. 35-37).

At the time of the hearing Plaintiff states her parents were still helping her with all of her

5

children – helping with the laundry, with the cooking, with the baby and with taking the older children to and from school.  One of her older sons has juvenile diabetes but has not applied for SSI.  Her husband helps with the management of his son's diabetes.  She asserts she can only go to parent's meetings for the children at school if she has a good day. On the average she has five to six bad days per week  (Tr. 37-38).

She takes the Methotrexate injections once per week. The injections give her a drained, wiped out feel, kind of nauseous for a couple of days. The Humira injections are not as bad as the Methotrexate but they will knock the bottom out of her for a couple of days.  On good days she tries to get her housework caught up and get groceries. On her bad days she doesn't get much done. (Tr. 39).  At the time of the hearing, her parents were still coming over once or twice per week, staying for two or three hours.  Her fibromyalgia makes her skin very sore. Some days it hurts for her kids to climb up in her lap.  She says she has constant pain caused by fibromyalgia. She hurts from the time her feet hit the floor to the time she goes to bed at night. (Tr. 40). Some nights she can't sleep from it.  The hurt from the fibromyalgia is just a sore overall ache from head to toe, like when she has a fever. The pain from rheumatoid arthritis affects whatever joints are bothering her, whether it's her hands, or her shoulders, or her hips or her knees and it's centralized. With the fibromyalgia, she feels like she hurts from head to toe. She has fatigue and feels washed out and tired (Tr. 40).  She doesn't sleep well and is just as tired when she wakes up.  She has a lot of morning stiffness.  She can tell if she pushes too hard.  Her hips will especially stiffen.  Her hands will stiffen up as well (Tr. 41).

Analysis

Plaintiff asserts that the ALJ should have given controlling weight to the opinion from Dr. Byrd, a treating physician, because his opinion was sufficiently supported by and consistent

with the medical evidence (Doc. 12, Plaintiff's Brief at 14-18). Plaintiff further contends that even if the opinion was not entitled to controlling weight, it should have been given some weight and the ALJ failed to provide reasons for the weight given to Dr. Byrd's opinion. Pl's Br. at 18-19. For reasons that follow, I agree with the Commissioner that the ALJ properly reviewed all record evidence, including Dr. Byrd's opinion, and his decision to give the opinion some, but not significant, weight is supported by substantial evidence (Tr. 23).

The weight afforded a physician's opinion regarding the nature and severity of a claimant's impairments depends on the examining relationship or treating relationship the physician may have had with the claimant, the evidence the physician presents to support his or her opinion, how consistent the physician's opinion is with the record as a whole, the physician's specialty, and other factors. See 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, a treating physician's opinion is entitled to more weight, and an ALJ must give good reasons for rejecting a treating physician's opinion. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, the Sixth Circuit "has consistently stated that [the Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir. 1993); see 20 C.F.R. §§ 404.1527(c)(2), (3)-(4), 416.927(c)(2), (3)-(4); Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 477 (6th Cir. 2003); Walters, 127 F.3d at 529-30.

As the Commissioner notes, opinions on some issues, such as whether the claimant is "disabled" or "unable to work" and the claimant's RFC, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d). Although physicians' opinions about what a

7

claimant can do are relevant evidence, they are not determinative of disability, as the ALJ has the responsibility of assessing a claimant's RFC and disability.  See 20 C.F.R. §§ 404.1520(e), 404.1527, 404.1545, 404.1546(c), 416.920(e), 416.927(d), 416.945, 416.946(c); SSR 96-5p (explaining that medical source statements and RFC are not the same thing).

In this case, if the opinion in the Medical Source Statement (Tr. 324-327) of Dr. Byrd was given controlling weight, there would be a finding of disability.  However, substantial evidence supports the ALJ's decision to give some weight, but not significant weight, to Dr. Byrd's opinion (Tr. 23).  The ALJ stated his reasons for giving Dr. Byrd's opinion some weight, consistent with the requirements of 20 C.F.R. §§ 404.1527, 416.927.  See also Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875-77 (6th Cir. 2007).  Plaintiff contends the ALJ erred by failing to explain why Dr. Byrd's opinion was given some weight. However, the ALJ's decision reflects the finding that Dr. Byrd's opinion was not supported by sufficient medical evidence, Dr. Byrd relied heavily on Plaintiff's subjective symptoms, and Dr. Byrd infrequently treated Plaintiff (Tr. 23).  The ALJ's statement is sufficient.  See, e.g., Torres v. Comm'r of Soc. Sec., No. 11-3981, 2012 WL 3089334, * 4-5 (6th Cir. July 31, 2012) (finding short statement of basis for according less weight to treating physician sufficient);  Tate v. Comm'r of Soc. Sec., No. 10-4387, 2012 WL 762884, at *2 (6th Cir. Mar. 9, 2012) (finding ALJ gave sufficient reasons for discounting treating physician's opinion).

The record reflects that Plaintiff visited Dr. Byrd on ten occasions from February 2006 to July 2010 (Tr. 233-42, 251-55, 260-67, 274-77, 281-83, 285-88, 346-48).  At most of these visits, Dr. Byrd's musculoskeletal physical examination reflects that Plaintiff had some myofascial tender points but no definite synovitis (Tr. 235, 237, 241, 253, 266, 276, 282, 287, 347-48).  Dr. Byrd repeatedly noted that Plaintiff was doing well and her arthritis was stable (Tr.

8

Case 4:12-cv-00065-HSM-WBC   Document 15   Filed 01/13/14   Page 8 of 16   PageID #: 429

235, 238, 241, 276, 281, 348).

Dr. Byrd completed a medical source statement on March 20, 2010 (Tr. 324-27). In his March 2010 assessment, Dr. Byrd opined that Plaintiff was incapable of tolerating even low stress jobs, that she needed to take unscheduled breaks every 30 to 60 minutes, and she would likely be absent from work more than four times per month due to her impairments (Tr. 325). According to Dr. Byrd, Plaintiff could stand less than two hours in an eight-hour workday, sit for four hours in an eight-hour workday, and needed to alternate sitting and standing (Tr. 324-25). Dr. Byrd opined that Plaintiff was completely precluded from all postural activities (Tr. 326). Dr. Byrd stated that his opinion was supported by Plaintiff's rheumatoid arthritis and fibromyalgia and that Plaintiff had "widespread joint and muscle tenderness" and synovitis of her hands (Tr. 325). Dr. Byrd noted that he "fully support[ed] [Plaintiff's] application for disability benefits" (Tr. 327). Dr. Byrd's treatment notes, however, support a finding of some synovitis in the hands only once, more than three years earlier, in January 2007 (Tr. 261-63). At that time, Plaintiff was still working (Tr. 124, 127, 163). Further, at the time Dr. Byrd completed the medical source statement, he had not treated Plaintiff since November 2008, more than fourteen months before (Tr. 233-35). In November 2008, Dr. Byrd's physical exam reflects "no definite synovitis," and Dr. Byrd noted Plaintiff was stable and doing "really well" (Tr. 235). In July 2010, four months after Dr. Byrd completed the assessment, Plaintiff returned for an office visit, and Dr. Byrd again noted that Plaintiff had no definite synovitis and was doing "very well" (Tr. 348).

As the ALJ pointed out, Dr. Byrd's own treatment notes fail to reflect the type of significant abnormalities that support finding the significant limitations he assessed on the March 2010 medical source statement (Tr. 23). See 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3);

9

Walters, 127 F.3d at 530 (noting that treating physician's own records do not support the claim of disabling impairments); Bogle, 998 F.2d at 348 (finding treatment notes contradicted treating physician's assessment of total disability). Although the ALJ recognized that Dr. Byrd treated Plaintiff, the ALJ noted the infrequency of Plaintiff's treatment (Tr. 23). See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ also noted that Dr. Byrd appeared to rely heavily on Plaintiff's subjective report of symptoms and limitations (Tr. 23), and the ALJ's observation is confirmed by a review of Dr. Byrd's treatment notes (Tr. 233-42, 251-55, 260-67, 274-77, 281-83, 285-88, 346-48). Plaintiff's allegations regarding her symptoms are not an acceptable basis for Dr. Byrd's opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d); see also Tate v. Comm'r of Soc. Sec., No. 10-4387, 2012 WL 762884, at *2 (6th Cir. Mar. 9, 2012) (concluding ALJ properly discounted treating physician's opinion in part because physician's opinion "appeared to be based on [claimant's] subjective complaints, without sufficient support from objective clinical or neurological findings").

      Dr. Byrd's opinion is also inconsistent with other evidence in the record. See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); Walters, 127 F.3d at 530 (finding that substantial medical evidence contradicting the treating physician's opinion of disability exists in the record); Bogle, 998 F.2d at 348-49 (noting that the ALJ supported his refusal to credit a treating physician's opinion by recognizing that medical evidence at the time revealed normal findings). As the ALJ noted, in 2009, Plaintiff underwent a consultative examination with Dr. Timothy M. Fisher (Tr. 289-92). Dr. Fisher found Plaintiff had "no significant synovitis" and opined that Plaintiff could perform jobs that require standing and walking six to eight hours daily, and gripping and manipulating objects weighing up to ten pounds frequently and up to thirty pounds occasionally (Tr. 23-24, 291). Dr. Fisher's finding is inconsistent with Dr. Byrd's assessment.

10

To support her position, Plaintiff argues that Dr. Byrd's opinion is consistent with medical records of Dr. Silvalingam Kanagasergar (Plaintiff's Brief at 16-17). However, these records are from 2005, three years before her alleged onset date and five years before Dr. Byrd's assessment. Plaintiff was working as a purchasing agent in 2005 and continued to work through December 2008, the month of her alleged onset date (Tr. 124-25, 127, 163). Medical records from a time period in which Plaintiff undisputedly was able to work and was not disabled fail to support Dr. Byrd's disability assessment three years later. See 20 C.F.R. §§ 404.1512(d)(2), 416.912(d)(2), 404.1527(c)(4), 416.927(c)(4); see also Blacha v. Sec'y of Health & Human Servs., 927 F.2d 228, 231 (6th Cir. 1990) (noting claimant continued to work two years after his accident, with no objective evidence his condition declined significantly, undermined his allegations of disabling limitations). At best they do indicate that some problems existed at that earlier date.

Further, even considering the 2005 records, they do not support Plaintiff's position that she suffers disabling impairments. On March 24, 2005, Plaintiff sought the consultation with Dr. Kanagasegar for an arthritis evaluation (Tr. 196-97). His examination found normal movements of the neck, shoulders, elbows and wrists, along with no synovitis of the hands, knees, and ankles (Tr. 197). Dr. Kanagasegar concluded that Plaintiff could have inflammatory arthritis and recommended medications (Tr. 197). The record does not indicate that Plaintiff ever followed up with Dr. Kanagasegar. Plaintiff additionally references 2005 medical records from White County Medical Associates (WCMA) (Doc. 2, Pl's Br. at 17). The record reflects that Plaintiff visited WCMA in 2005 complaining of pain and that WCMA concluded she had fibromyalgia and inflammatory arthritis (Tr. 202, 203). However, Plaintiff had good range of motion and no joint swelling (Tr. 205). The 2005 medical records are inconsistent with Dr. Byrd's opinion.

11

The assessment of the State agency medical consultants, Dr. John T. Netterville and Dr. Rudy Warren, also contradict Dr. Byrd's opinion (Tr. 23, 294-302, 317-19). See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Dr. Netterville concluded Plaintiff would be able to lift ten pounds frequently and twenty pounds occasionally, stand and walk six hours in an eight-hour workday, sit six hours in an eight-hour workday, could occasionally perform postural activities, and never climb ladders, ropes, or scaffolds (Tr. 295). Dr. Warren found Plaintiff had the ability to understand and remember simple and detailed instructions, maintain attention and concentration for at least two hours, relate properly to coworkers and supervisors, and adapt to routine changes in the workplace (Tr. 319). As the Commissioner argues, State agency consultants are highly qualified specialists and are considered experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); SSR 96-6p . The findings of Dr. Netterville and Dr. Warren regarding Plaintiff's limitations are supported by the medical findings and consistent with the record as a whole. See 20 C.F.R. §§ 404.1527(c)(3), (c)(4), 416.927(c)(3), (c)(4). Their assessments, therefore, provide further support for the ALJ's decision to discount the opinion of Dr. Byrd. See 20 C.F.R. §§ 404.1527(c)(4), (e)(2)(ii), 416.927(c)(4), (e)(2)(ii); SSR 96-6p; McClanahan v. Comm'r of Soc. Sec., 474 F.3d 830, 839 (6th Cir. 2006). Dr. Byrd's unsupported opinion is not consistent with the record evidence or his own treatment notes, and the ALJ correctly determined that it should be given some, but not significant, weight. See 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4). Ultimately the ALJ found Plaintiff capable of light work with additional restrictions and the VE testified she could perform her work as an administrative assistant and also her work as a purchasing agent.

### The ALJ properly assessed Plaintiff's credibility as to Reports of Pain

Plaintiff argues that the ALJ erred when he found Plaintiff's subjective pain complaints to be only partially credible. When a claimant alleges disability based on her subjective complaints, she must present objective medical evidence of an underlying medical condition. See 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p; Walters, 127 F.3d at 531. If a medically determinable condition exists, the ALJ must decide if the objective medical evidence confirms the severity of the alleged symptoms arising from the condition or if the condition is of such severity that it could reasonably be expected to give rise to the alleged symptoms. See 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p; Walters, 127 F.3d at 531. "The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis." Walters, 127 F.3d at 531.

Plaintiff testified that she had physical pain in her shoulders, hips, knees, and hands, and her pain averages an eight out of ten (Tr. 33, 35). Plaintiff testified that her fibromyalgia causes constant pain "from head to toe" and arthritis affects her joints and is centralized (Tr. 40). Plaintiff stated that she also experiences fatigue all day and stiffness for a couple of hours in the morning (Tr. 40-41). Plaintiff testified that she can stand ten minutes, sit fifteen to twenty minutes, and lift ten pounds (Tr. 34). Plaintiff cooks and does laundry, with some help, and drives her children to school (Tr. 35, 43). Plaintiff testified that she has five or six "bad days" every week with one "good day" (Tr. 38). On her good days, she stated that she is able to do housework, grocery shop, and care for her children (Tr. 39). On bad days, she does not "accomplish a whole lot" (Tr. 39). Once or twice a week her parents help "get everything caught up" for two or three hours (Tr. 39-40).

The ALJ reviewed the medical evidence in evaluating the credibility of Plaintiff's subjective pain complaints. The ALJ noted that Plaintiff did not take her prescribed medication during pregnancy and continued to do well (Tr. 24, 233-38). During this period, in 2008, Plaintiff's rheumatoid arthritis was considered stable (Tr. 235, 238). As recognized by the ALJ, Plaintiff's physical exams revealed some myofascial tender points but no synovitis (Tr. 24, 235, 237). Plaintiff had normal range of motion (Tr. 24, 235, 237). As the ALJ recognized, during the consultative examination with Dr. Fisher, Plaintiff had normal gait and maneuvers and intact sensation (Tr. 24, 290-91). Plaintiff was able to perform, without difficulty, a normal heel to toe walk, squat, and leg stands (Tr. 24, 291). Plaintiff had normal range of motion without pain (Tr. 24, 291). In July 2010, Dr. Byrd noted Plaintiff was back on her medication and doing very well with her arthritis (Tr. 22-23, 347-48).

Moreover, as the ALJ recognized, Plaintiff's reported activities of daily living are not consistent with her alleged disabling symptoms (Tr. 24). In June 2009, Plaintiff reported cooking for her family on a daily basis, making beds, washing clothes all day twice a week, ironing, cleaning the house for two to three hours daily, shopping in stores for one to one-and-a-half hours a week, and driving daily (Tr. 24, 155-62). Plaintiff reported hobbies, including reading, watching television, and doing "word finds" (Tr. 24, 159). Plaintiff additionally reported having friends and family over to watch movies or have dinner and attending church (Tr. 24, 159). Plaintiff stated that she could walk 3/4 mile before having to rest (Tr. 160). Plaintiff also reported handling stress and routine changes well and getting along with authority figures (Tr. 161). These activities are not consistent with Plaintiff's allegation that she is completely disabled from all work.

Based on the record as a whole I conclude substantial evidence supports the ALJ's

finding that Plaintiff's testimony regarding her pain and symptoms was not entirely credible in light of the medical findings and other evidence (Tr. 24). As the Commissioner argues, the medical records from the relevant period, as discussed by the ALJ, do not indicate Plaintiff's condition was as limiting as she claimed (Tr. 22-24). Given the evidence of record, substantial evidence supports the ALJ's finding that Plaintiff's allegations were not credible and the ALJ's finding that Plaintiff could perform light work (Tr. 21-22). In this case there is evidence which if accepted would support a finding of disability. However, even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. See Ross v. Richardson, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion.

## Conclusion

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner, and neither reversal nor remand is warranted on these facts. Accordingly, I RECOMMEND:

(1) The plaintiff's motion for judgment on the administrative record (Doc. 11) be DENIED.

(2) The defendant's motion for summary judgment (Doc. 13) be GRANTED.

(3) The case be DISMISSED. [1]

S/*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).